UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| HANNAH SUES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | Civil Action No. 25-CV-11927-AK |
| v. | ) | |
| | ) | |
| ERICK QUASHIE, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM AND ORDER ON PLAINTIFF'S MOTION TO TRANSFER VENUE AND MOTION FOR INJUNCTIVE RELIEF AND DEFENDANT'S MOTION TO DISMISS AND MOTION TO STRIKE**

**KELLEY, D.J.**

Plaintiff Hannah Sues, proceeding *pro se*, challenges Defendant Erick Quashie's unauthorized use of the trademark "Doober" under federal and state law, alleging consumer confusion, brand dilution, and loss of opportunity. [Dkt. 25].  Before the Court are several pending motions.  Plaintiff moves to transfer the case to the U.S. District Court for the Northern District of Ohio [Dkt. 95] and for a preliminary injunction [Dkt. 110].  Defendant moves to dismiss for lack of standing and failure to state a claim [Dkt. 102] and to strike Plaintiff's Second Opposition to the Motion to Dismiss. [Dkt. 117].  For the following reasons, Defendant's Motion to Dismiss is **GRANTED**, Plaintiff's Motion to Transfer is **DENIED**, and Plaintiff's Motion for Injunctive Relief and Defendant's Motion to Strike are **DENIED AS MOOT**.

**I.    BACKGROUND**

The following facts are drawn from the Amended Complaint and are accepted as true for purposes of this Motion, unless otherwise noted.  Plaintiff Sues is the owner of Flipt Industries,

1

LLC ("Flipt"), an Ohio-based entity. [Dkt. 25 at 1]. Sues, through Flipt, owns Doober, a pre-revenue cannabis delivery compliance platform.[1] [Id. at 11, 49]. Doober operates its delivery services "via decentralized driver entities and real-time geofencing." [Dkt. 25, Ex. 2]. On January 23, 2024, Sues registered "Doober Inc." as a trade name in Ohio. [Dkt. 25, Ex. 17]. A year later, on April 28, 2025, Sues filed an application with the U.S. Patent and Trademark Office ("USPTO") seeking to register "Doober" as a trademark for services relating to the transport, delivery, packaging, and storage of recreational and medical marijuana. [Dkt. 25, Ex. 1]. On May 20, 2025, Sues further filed a provisional patent application for "Doober." [Dkt. 25, Ex. 2].

Sues engaged in various outreach efforts for Doober. Between May 29 and June 4, 2025, Sues emailed the Massachusetts Cannabis Control Commission ("CCC") to propose integrating Doober into the Commonwealth's cannabis delivery model. [Dkt. 25, Ex. 7]. Sues' email outlined Doober's capabilities and the anticipated benefits of such a partnership. [Id.]. She received automated replies and acknowledgments confirming receipt of those communications but no further response. [Id.]. In addition, Sues maintained an online presence for Doober on various social media pages, including a Facebook page that is now disabled and a LinkedIn profile that was deleted and later restored. [Dkt. 25 at 12, Ex. 13]. Sues also emailed business inquiries to dispensaries in Ohio, Massachusetts, and other states. [Dkt. 25, Ex. 4 at 8].

Defendant Quashie is a Massachusetts resident and the managing member of Doober

---

[1] Quashie contends that only Flipt, not Sues, is the owner of Doober, arguing that both the USPTO's online database and Ohio registration for Doober identify Flipt as the owner. [Dkt. 25, Exs. 1, 17]. However, the trademark application identifies "Hannah Sues" as the signatory and represents that the signatory is the "Owner." [Dkt. 25, Ex. 1 at 8]. At this stage of the proceedings, the Court finds this sufficient to establish a reasonable inference of Sues' ownership over Doober.

Deliveries, LLC, a Massachusetts-based cannabis delivery company. [Dkt. 25 at 9]. Since the company's founding in 2024, Quashie has created promotional content for Doober Deliveries on various online platforms, including LinkedIn, Facebook, Instagram, and YouTube, and has maintained active domain names associated with the business, including "mydoober.com" and "dooberdeliveries.com." [Dkt. 25, Exs. 6, 8, 20]. Upon learning of Quashie's use of the "Doober" name, on May 16, 2025, Sues sent a cease-and-desist letter asserting infringement and providing notice of her pending trademark application. [Dkt. 25, Ex. 4]. Four days later, Quashie responded, rejecting Sues' demands and disputing any alleged infringement. [Dkt. 25, Ex. 5]. Sues thereafter sent another cease-and-desist letter elaborating on the timeline of the company's logo creation and state registration history, geographic scope, and federal trademark and provisional patent applications. [Dkt. 25, Ex. 4 at 8-9]. There appears to be no further contact between the parties beyond this exchange of correspondence.

On July 7, 2025, Sues filed this action against Quashie and several other Defendants alleging federal and state claims regarding Quashie's use of "Doober." The Amended Complaint brings the following eleven claims: (1) Federal Trademark Infringement; (2) False Designation of Origin; (3) Cybersquatting; (4) violations of the Computer Fraud and Abuse Act; (5) Contributory Trademark Infringement and Platform Negligence; (6) Intentional Interference with Prospective Economic Advantage; (7) Defamation and Trade Libel; (8) Unjust Enrichment; (9) Unfair Competition; (10) Fraudulent Misrepresentation, Civil Conspiracy, and Business Impersonation; and (11) Breach of Fiduciary Duty and Duty of Good Faith and Fair Dealing. [Dkt. 25 at 15]. Sues asserts that all claims are brought exclusively in her individual capacity and not on behalf of Flipt or Doober, Inc. [Id. at 8].

On January 6, 2026, Sues moved to transfer the case to the U.S. District Court for the

3

Northern District of Ohio.  The Court denied the Motion as to other Defendants, but the Motion remains pending against Quashie. [See Dkt. 114].  Sues also moves for a preliminary injunction. Quashie opposes the Motion to Transfer [Dkt. 101] and Motion for Injunctive Relief [Dkt. 115] and has also filed a Motion to Dismiss the Amended Complaint, arguing that Sues lacks standing under the Lanham Act and fails to state a claim.  Sues filed her first opposition to Quashie's Motion to Dismiss on January 26, 2026 [Dkt. 103], as well as a second opposition on April 14, 2026, without seeking leave from the Court [Dkt. 116].  Quashie moves to strike Plaintiff's Second Opposition to his Motion to Dismiss.

## II.    MOTION TO TRANSFER

Sues moves to transfer this case to the Northern District of Ohio under 28 U.S.C. § 1404(a).  Section 1404(a) permits transfer only to a district "where it might have been brought." 28 U.S.C. § 1404(a).  This means that the transferee court must have personal jurisdiction over the parties. First State Ins. Co. v. XTRA Corp., 583 F. Supp. 3d 313, 318 (D. Mass 2022) (explaining that the phrase "might have been brought" means the receiving court must have "subject matter jurisdiction, *personal jurisdiction*, and venue" (emphasis added) (quoting 28 U.S.C. § 1404(a))).  The party seeking transfer bears the burden of proof. Dress v. Cap. One Bank (USA), N.A., 368 F. Supp. 3d 178, 181 (D. Mass. 2019).

Here, Sues alleges no facts that would support the Northern District of Ohio's exercise of personal jurisdiction over Quashie.  Personal jurisdiction over an individual defendant may be established either by general jurisdiction (i.e., based on the individual's domicile) or by specific jurisdiction (i.e., where the plaintiff's claims "arise out of or relate to the defendant's contacts" with the state). Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct., 592 U.S. 351, 359 (2021).  Sues fails to establish either basis.  As to general jurisdiction, Sues concedes that Quashie is "an

4

individual residing in the Commonwealth of Massachusetts," and does not assert that Quashie is domiciled, was served, or consents to suit in Ohio. [Dkt. 25 at 9-10].  As for specific jurisdiction, Sues fails to allege any facts showing that Quashie conducted any Ohio-specific activity.  The challenged conduct, such as Quashie's alleged use of "Doober" through online domains and conducting investor outreach, is alleged to have occurred in or from Massachusetts. [Id.].  Sues does not allege that Quashie maintains an office, employs anyone, or directed any conduct at Ohio or Ohio-based counterparties.  Sues bears the burden of establishing personal jurisdiction, and she has failed to meet that burden here.  Accordingly, the Motion to Transfer is **DENIED.**

## III.    MOTION TO DISMISS

To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege sufficient facts to state a claim for relief that is "plausible on its face" and actionable as a matter of law. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  The court is "required to construe liberally a pro se complaint," but a plaintiff's "pro se status does not insulate [him] from complying with procedural and substantive law," including the Federal Rules of Civil Procedure and Local Rules. Ahmed v. Rosenblatt, 118 F.3d 886, 890 (1st Cir. 1997).

Reading the complaint "as a whole," the court must conduct a two-step, context-specific inquiry. García-Catalán v. United States, 734 F.3d 100, 103 (1st Cir. 2013).  First, the court must perform a close reading of the complaint to distinguish factual allegations from conclusory legal statements. García-Catalán, 734 F.3d at 103.  Factual allegations must be accepted as true, while legal conclusions are not entitled to credit. Id.  A court may not disregard properly pleaded factual allegations even if actual proof of those facts is improbable. Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011).  On a Rule 12(b)(6) motion, a district court may

consider the "facts and documents that are part of or incorporated into the complaint" and also "documents incorporated by reference in [the complaint], matters of public record, and other matters susceptible to judicial notice." Giragosian v. Ryan, 547 F.3d 59, 65 (1st Cir. 2008). A motion to dismiss may be granted when the "factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture." Squeri v. Mount Ida Coll., 954 F.3d 56, 66 (1st Cir. 2020). Second, the court must determine whether the factual allegations present a "reasonable inference that the defendant is liable for the misconduct alleged." Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011) (citation omitted). Dismissal is appropriate when the complaint fails to allege a "plausible entitlement to relief." Rodriguez-Ortiz v. Margo Caribe, Inc., 490 F.3d 92, 95 (1st Cir. 2007) (quoting Bell Atl. Corp., 550 U.S. at 559).

Quashie moves to dismiss all claims asserted in the Amended Complaint for lack of standing and failure to state a claim. The Court first addresses the threshold issue of standing. As to whether the Amended Complaint adequately state a claim, given the volume and variety of claims presented, the Court addresses them in groups for purposes of efficiency: trademark claims, claims under the Anti-Cybersquatting Consumer Protection Act, claims under the Computer Fraud and Abuse Act, tort-based claims, and contract-based claims.

### 1.    Statutory Standing

Quashie moves to dismiss Sues' trademark-based claims for lack of standing under the Lanham Act. He brings the Motion pursuant to Rule 12(b)(1). As a threshold matter, whether a plaintiff falls within the class of persons authorized to sue under a statute does not implicate Article III subject-matter jurisdiction under Rule 12(b)(1). Foisie v. Worcester Polytechnic Inst., 967 F.3d 27 (1st Cir. 2020) (citing Katz v. Pershing, LLC, 672 F.3d 64, 75 (1st Cir. 2012))

6

("Arguments concerning the absence of statutory standing, unlike arguments concerning the absence of constitutional standing, do not address a court's subject matter jurisdiction but, rather, address the merits of the plaintiff's claims.").  Rather, it concerns whether the plaintiff has a valid cause of action under the statute.  "Consequently, such arguments are more appropriately evaluated under the umbrella of Federal Rule of Civil Procedure 12(b)(6)." Id.; see also United States v. Catala, 870 F.3d 6, 10 (1st Cir. 2017).  The Court thus proceeds under Rule 12(b)(6).

On the merits, Quashie contends that Sues lacks standing to sue under the Lanham Act because she does not personally own "Doober" and because "Doober" is not registered with the USPTO.  However, as explained, the "Doober" trademark application identifies Sues as the signatory-owner, which is sufficient, for purposes of this Motion, to plausibly allege Sues' ownership. [Dkt. 25-1 at 8].  As to the registration status of "Doober," registration requirements differ between the four statutes (i.e., Section 32 of the Lanham Act, Section 43(a) of the Lanham Act, the Anti-Cybersquatting Consumer Protection Act, and the Consumer Fraud and Abuse Act), and those differences are best addressed within the elements of each claim. See Rex Real Est. I, L.P. v. Rex Real Est. Exch., Inc., 80 F.4th 607, 616-17 (5th Cir. 2023) (finding that Section 32 requires registration, but Section 43(a) does not).  The Court thus addresses Quashie's arguments during its Rule 12(b)(6) analysis of each substantive claim. See Catala, 870 F.3d at 10 ("[A]n inquiring court may opt, in the interest of efficiency, to forgo an inquiry into statutory standing and reject a claim on the merits.").

### 2.    Trademark Claims (Counts I-II, V, and IX)

Sues' asserts multiple trademark infringement claims arising from Quashie's use of the term "Doober" in connection with his business.  The Court finds that the Amended Complaint fails to plausibly allege any of these claims.  First, in Count I, Sues alleges that Quashie infringed

her purported trademark rights in "Doober" in violation of Section 32 of the Lanham Act by using a similar mark on various online platforms without her authorization. Section 32 of the Lanham Act prohibits "any person who shall, without the consent of the registrant . . . use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark." 15 U.S.C. § 1114. The statute defines a registered mark as one "registered in the United States Patent and Trademark Office." 15 U.S.C. § 1127. The statute therefore affords a cause of action only with respect to marks registered with the USPTO. See Ahmed v. Hosting.com, 28 F. Supp. 3d 82, 87-88 (D. Mass 2014).

Here, because "Doober" is not a registered mark, Sues lacks a cognizable cause of action under Section 32. Sues alleges only that the trademark application for "Doober" was filed on April 28, 2025. Filing an application for a trademark, however, is only a step in the process of receiving registration; it is not a showing of registration with the USPTO. Ahmed, 28 F. Supp. 3d at 88 ("A trademark application . . . does not by itself confer any ownership rights." (citing, *inter alia*, Armstrong Paint & Varnish Works v. Nu-Enamel Corp., 305 U.S. 315, 322 (1938))). Sues does not allege that her trademark application has been approved, nor does the USPTO's online database reflect registration.[2] See USPTO Trademark/Service Mark Application for Serial Number 99158214, USPTO Principal Register, https://tmsearch.uspto.gov/search/search-results/99158214 (last visited Apr. 16, 2026, 12:51 PM EST). Sues accordingly fails to state a claim because she lacks a cause of action under Section 32.

Next, in Count II, Sues brings a false designation of origin claim under Section 43(a) of the Lanham Act. Section 43(a) extends protection to certain marks that are not registered with

---

[2] Because the USPTO's site is a public government website, the Court may take judicial notice of it. Giragosian, 547 F.3d at 65.

the USPTO.  It prohibits "us[ing] in commerce . . . any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which . . . is likely to cause confusion" about or "misrepresent" the origin of a mark. Id.  To state a claim under Section 43(a), a plaintiff must demonstrate "(1) that [her] mark is entitled to trademark protection, and (2) that the allegedly infringing use is likely to cause consumer confusion." Bos. Duck Tours, LP v. Super Duck Tours, LLC, 531 F.3d 1, 12 (1st Cir. 2008).

Sues fails to state a cognizable claim under Section 43(a) because she does not plausibly satisfy either required element.  First, Sues has not shown that "Doober" is entitled to trademark protection.  To establish protection for an unregistered mark, a plaintiff bears the burden of demonstrating that the mark is "distinctive (either inherently or through acquired secondary meaning)." Borinquen Biscuit Corp. v. M.V. Trading Corp., 443 F.3d 112, 117 (1st Cir. 2006). Generic terms are not sufficiently "distinctive" to merit protection, as they only "designate[] the class, or 'genus,' of goods," and do not "distinguish the goods of one producer from another." Bos. Duck Tours, 531 F.3d at 13-14 (concluding "duck tours" is a generic term).  Here, Sues' provides no allegations plausibly establishing that "Doober" is an inherently distinctive, non-generic mark.  Nor does she offer allegations, factual support, or arguments suggesting that the asserted mark has acquired secondary meaning sufficient to warrant protection.

Second, even if "Doober" were sufficiently distinctive to qualify for protection, Sues nevertheless fails to allege facts supporting a plausible likelihood of consumer confusion.  "[A] defendant's use of a mark must be *confusing* in the relevant statutory sense for a plaintiff to raise a viable infringement claim." Swarovski Aktiengesellschaft v. Bldg. No. 19, Inc., 704 F.3d 44, 52 (1st Cir. 2013).  The First Circuit considers eight factors to assess the likelihood of customer confusion, including the similarity of the marks, the similarity of the goods or services, the

9

relationship between the parties' channels of trade, the relationship between the parties' advertising, the classes of prospective purchasers, evidence of actual confusion, the defendant's intent in adopting its mark, and the strength of the plaintiff's mark. See Bos. Duck Tours, 531 F.3d at 10 (citing Pignons S.A. de Mecanique de Precision v. Polaroid Corp., 657 F.2d 482, 487 (1st Cir. 1981)). "No one factor is necessarily determinative, but each must be considered." Keds Corp. v. Renee Int'l Trading Corp., 888 F.2d 215, 222 (1st Cir. 1989).

Having considered each of these eight factors, the Court finds that Sues has not plausibly pleaded a likelihood of confusion. Sues' only factual allegations consist of maintaining now-defunct social media pages on Facebook and LinkedIn, as well as sending out "emails and business inquiries" to an unspecified number of dispensaries in Ohio, Massachusetts, and other states. These allegations do not identify Sues' customer base or channels of trade, describe any actual or prospective sales or revenue, or establish the scope or nature of any ongoing business relationships or advertising. Ahmed v. Twitter, Inc., 2014 U.S. Dist. LEXIS 67405, at *8-9 (D. Mass. May 16, 2014) (rejecting allegations of trademark infringement and "heavy losses due to confusion" because plaintiff had not identified customer base, among others). Nor has she alleged a single instance of confusion. Moreover, "Doober" is not a strong mark. "A mark's strength turns on length of time a mark has been used; the plaintiff's relative renown in its field; the plaintiff's vigilance in promoting its mark; the number of similar registered marks in the field; and the success of other firms in registering similar marks." Unleashed Doggie Day Care, LLC v. Petco Animal Supplies Stores, Inc., 828 F. Supp. 2d 384, 395 (D. Mass. 2010). "Doober" is currently unregistered with the USPTO and Sues first filed an application on April 28, 2025, only two months before initiating this action. Finally, even assuming Sues could establish some level of commercial advertising or sales, she nevertheless fails to allege a

10

plausible likelihood of confusion because the companies have materially distinct branding and visual presentation. "The degree of similarity between two marks . . . is determined by analyzing their sight, sound, and meaning." Bos. Duck Tours, 531 F.3d at 24. For logos, "similarity is determined on the basis of the total effect of the designation, rather than a comparison of individual features." Id. at 29. Here, as alleged in the Amended Complaint, Sues' Doober logo consists of a green, capital letter "D" mounted on wheels, accompanied by three horizontal stripes to the left and a marijuana leaf positioned in the top left corner. [See Dkt. 25-4]. By contrast, Quashie's Doober Deliveries logo depicts a dark green teardrop shape with an internal, vertical, bright-yellow stripe. [See Dkt. 25-6 at 5]. The logos are visually distinct shapes and color schemes and present overall different commercial impressions.

Given the dissimilarity of the marks, Sues' weak mark, and the lack of any alleged confusion or customer base, the Court finds that no reasonable factfinder could find a likelihood of confusion on any set of facts that Sues could eventually prove. "Although '[l]ikelihood of confusion is a question of fact . . . [if] an inference of likelihood of confusion would clearly be unreasonable, that is, that no reasonable factfinder could find a likelihood of confusion on any set of facts that Plaintiffs could prove, then Defendants will have shown that confusion is unlikely as a matter of law.'" Southgate v. Soundspark, Inc., No. 14-CV-13861, 2016 WL 1268253, at *4 (D. Mass. Mar. 31, 2016) (quoting MJ Hoffman & Assocs., LLC v. Commc'n Sales Techniques, LLC, No. 15-CV-10447, 2015 WL 3767059, at *3 (D. Mass. June 17, 2015)); see also Moving & Storage, Inc. v. Panayotov, No. 12-CV-12262, 2014 WL 949830, at *4 (D. Mass. Mar. 12, 2014) (granting motion to dismiss trademark infringement claim because it was "implausible that any reasonably prudent purchaser exercising ordinary care would be confused by the use of the plaintiffs' marks").

11

Moving to Count V, Sues likewise fails to state a claim for contributory infringement. Contributory infringement occurs when a defendant induces another party, the "primary infringer," to infringe. See Scholz v. Goudreau, 132 F. Supp. 3d 239, 249 (D. Mass 2015) (citing Perfect 10, Inc. v. Visa Int'l Serv. Ass'n, 494 F.3d 788, 807 (9th Cir. 2007)). Thus, for there to be a cognizable contributory infringement claim, there must be an underlying direct infringement. See id.; Greenspan v. Random House, Inc., 859 F. Supp. 2d 206, 219 (D. Mass. 2012) ("There can be no contributory infringement absent actual infringement."). Here, because Sues has not shown there to be any direct infringement on "Doober," the contributory infringement claim likewise fails.

Finally, in Count IX, Sues brings a state trademark infringement claim under Chapter 93A of the Massachusetts General Laws, which provides a cause of action for unfair competition. Courts have routinely held that Chapter 93A claims rise and fall with their federal counterparts. See, e.g., Nero Int'l Holding Co., Inc. v. NEROtix Unlimited, Inc. 695 F. Supp. 3d 110, 128 (D. Mass 2023); Bay State Sav. Bank v. Baystate Fin. Servs., LLC, 484 F. Supp. 2d 205, 219 (D. Mass. 2007); L&P Bos. Op., Inc. v. Window Nation, LLC, 626 F. Supp. 3d 461, 467 (D. Mass. 2022) ("In Massachusetts, the test for common-law trademark infringement is the same as under the Lanham Act."). For substantially similar reasons as those for Sues' Lanham Act claims, her state claim for infringement also fails. See Jenzabar, Inc. v. Long Bow Grp., Inc., 82 Mass. App. Ct. 648, 667 (2012). In any event, "[u]nder Massachusetts law . . . trademark infringement suits can only lie if the mark is registered in the state." Ahmed, 28 F. Supp. 3d at 87 n.5 (citing Jenzabar, Inc. v. Long Bow Grp., Inc., 82 Mass. App. Ct. 648, 654 n.11 (2012)). Here, there is no allegation that Sues registered "Doober" in Massachusetts.

12

### 3.    Anti-Cybersquatting Consumer Protection Act (Count III)

In Count III, Sues brings a cybersquatting claim under the Anti-Cybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125(d).  Congress passed the ACPA "primarily in an effort to stop 'cybersquatters who register numerous domain names containing American trademarks or tradenames only to hold them ransom in exchange for money.'" N. Light Tech., Inc. v. N. Lights Club, 97 F. Supp. 2d 96, 115 (D. Mass. 2000) (quoting H.R. Rep. No. 106-412, at 5), aff'd, 236 F.3d 57 (1st Cir. 2001).  To prevail on a claim under 15 U.S.C. § 1125(d), a plaintiff must show that "(1) [she] has a valid trademark entitled to protection; (2) [her] mark is distinctive or famous; (3) the defendant's domain name is identical or confusingly similar to . . . the owner's mark; and (4) the defendant used, registered, or trafficked in the domain name (5) with a bad faith intent to profit." Bos. Sports Med., Inc. v. Bos. Sports Med. & Rsch. Inst., LLC, No. 21-CV-11945, 2022 WL 2915670, at *5 (D. Mass. July 25, 2022) (quoting IvyMedia Corp. v. Take Tour, Inc., No. 12-CV-11535, 2013 WL 5290551, at *11 (D. Mass. July 9, 2013)).

As explained, Sues fails to plausibly demonstrate that "Doober" is a mark entitled to protection.  Moreover, Sues alleges no facts supporting that Quashie had a "bad faith intent to profit from [another's] mark." N. Light Tech., Inc., 236 F.3d at 64 (alteration in original); see Nero Int'l Holding Co., Inc., 695 F. Supp. 3d at 129-30 (explaining nine statutory factors for bad faith).  Accordingly, Sues' cybersquatting claim fails.

### 4.    Computer Fraud and Abuse Act (Count IV)

Next, Sues brings a claim under Section 1030 of the Computer Fraud and Abuse Act ("CFAA"), alleging Quashie engaged in or enabled unauthorized uses of "Doober" and her personal name by digital impersonation, platform manipulation, and data access.  Section 1030

imposes criminal liability on anyone who knowingly "accesses a computer without authorization or exceeds authorized access . . . to obtain or alter information in the computer that the accessor is not entitled so to obtain or alter." 18 U.S.C. § 1030(a)(2), (e)(6).  The CFAA is "primarily a criminal statute," but a private cause of action for damages and injunctive relief is permitted under § 1030(g). Philips Med. Sys. P.R. Inc. v. GIS Partners Corp., 203 F. Supp. 3d 221, 229-30 (D.P.R. 2016) (quoting EF Cultural Travel BV v. Explorica, 274 F.3d 577, 581 n.8 (1st Cir. 2001)).  The statute "lists seven different types of" prohibited conduct that "ranges from trafficking in passwords to knowing and unauthorized access" to protected computers. Id. at 230.

Here, Sues fails to specify which provision of the CFAA Quashie supposedly violated. She does not distinguish between the seven sections nor offer any specific allegations for the Court to deduce the theory of liability on which her claim rests.  Without such specificity, the Court cannot assess whether she plausibly meets the elements of her claim. See Fed. R. Civ. P. 8 (requiring a pleading to provide a "short and plain statement of the claim showing that the pleader is entitled to relief").  And even assuming a specific provision could be identified, Sues' allegations regarding Quashie's conduct are conclusory and do not provide particularized facts regarding how, when, or through what means he allegedly manipulated platforms or unlawfully accessed her data. See Ulatowski v. Ponte, 524 F. Supp. 1112, 1114 (D. Mass. 1981) (acknowledging that *pro se* plaintiffs must provide sufficient facts to support a claim and if not provided, a court is not required to find unpleaded facts to support conclusory allegations). Accordingly, Sues fails to state a claim upon which relief may be granted.

### 5.     State Tort Claims (Counts VII and X)

Sues alleges several state tort claims, including defamation, trade libel, fraudulent misrepresentation, civil conspiracy, and business impersonation.  Sues fails to state a claim for

any of these torts. As to defamation, Sues claims Quashie published, or caused to be published, false representations that "Doober" is associated with unlicensed, deceptive, or unlawful activity. In Massachusetts, to state a claim for defamation, a plaintiff must establish (1) the existence of a false publication concerning the plaintiff, (2) that the defendant was at fault for, (3) which has the capability to damage the plaintiff's reputation, and (4) that caused economic loss. White v. Blue Cross & Blue Shield of Mass., Inc, 442 Mass. 64, 66 (2004). Allegations that "do[] not identify a specific statement, [are] not sufficient" to properly allege defamation. 3137, LLC v. Town of Harwich, 126 F.4th 1, 15 (1st Cir. 2025) (quoting Kelleher v. Lowell Gen. Hosp., 152 N.E.3d 126, 131 n.2 (Mass. App. Ct. 2020)). Here, Sues fails to identify a specific publication, false or otherwise, made by Quashie concerning her or "Doober," and therefore, her claim must fail.

Similarly, trade libel "requires proof of a publication of a false statement 'derogatory to the quality of a plaintiff's business, of a kind calculated to prevent others from dealing with [her].'" Rass Corp. v. Travelers Cos., 90 Mass. App. Ct. 643, 653 (2016) (quoting Patel v. Soriano, 848 A.2d 803 (N.J. Super. App. 2004)). Sues fails to identify a statement by Quashie regarding the "Doober" brand or business, thus failing to satisfy the requirements to bring a trade libel claim.

Next, a fraudulent misrepresentation claim requires a plaintiff to show "a false statement of material fact made [by the defendant] to induce the plaintiff to act," with the plaintiff having relied on the false statement to their detriment. Zimmerman v. Kent, 31 Mass. App. Ct. 72, 77 (1991) (citing Powell v. Rasmussen, 355 Mass. 117, 118-19 (1969)). Here, Sues fails to allege any false statements by Quashie on which she relied to undertake specific actions, or any detriment suffered by Sues because of such actions.

15

Finally, to state a claim for civil conspiracy, a plaintiff may rely on one of two theories establishing the existence of a conspiracy: (1) vicarious liability, or (2) an inference of a relationship based on the defendant's ability to exert peculiar power of coercion. See 3137, LLC, 126 F.4th at 14 (citing Snyder v. Collura, 812 F.3d 46, 52 (1st Cir. 2016)). Sues fails to state a claim under either theory. To prevail in bringing a claim under vicarious liability, a plaintiff must show an underlying tort. Taylor v. Am. Chem. Council, 576 F.3d 16, 35 (1st Cir. 2009) (citing Mass. Laborers' Health & Welfare Fund v. Philip Morris, Inc., 62 F. Supp. 2d 236, 244 (D. Mass. 1999)). Sues fails to allege any such tort claim. Similarly, Sues does not state facts to suggest that Quashie held or holds any power of coercion over her or "Doober."

### 6.     State Contract Claims (Counts VI, VIII, and XI)

Lastly, Sues brings various state contract claims revolving around her relationship with Quashie and duties stemming from this purported relationship, including intentional interference with prospective economic advantage, breach of fiduciary duty, breach of the duty of good faith and fair dealing, and unjust enrichment. Sues fails to state a claim under any of these theories.

First, as to intentional interference, Sues alleges that she was prevented from "finalizing pending licensing agreements, attract[ing] investor commitments, and secur[ing] business development contracts" due to Quashie's impersonation of Doober and refusal to remove infringing content. A claim for intentional interference requires the plaintiff to show (1) the existence of a contract or business relation with a third party, (2) the defendant knowingly induced the third party to break that contract or business relationship, (3) that interference was improper in motive or means, and (4) plaintiff was harmed or damaged as a result. Sensitech Inc. v. LimeStone FZE, 548 F. Supp. 3d 244, 258 (D. Mass. 2021).

Here, while Sues claims in a conclusory fashion to have active communications with both

16

investors and potential partners, she fails to raise any facts that would establish beyond a speculative level that a contract or business relationship exists.  The CCC, for example, did not respond to Sues' unilateral business collaboration proposal beyond acknowledging receipt.  A unilateral communication falls short of creating a contract or business relation.  See Ji v. Bose Corp., 578 F. Supp. 2d 217, 220 (D. Mass. 2008), aff'd, 626 F.3d 116 (1st Cir. 2010) ("[A] contract requires a meeting of the minds.").  Moreover, even if the Court were to assume Sues has sufficiently alleged the existence of contract, she pleads no facts showing that Quashie had knowledge of the relationship with the CCC nor any other alleged contract[3] and intentionally interfered with it.  Sues thus fails to state a claim upon which relief may be granted as to this ground.

As to breach of fiduciary duty, a fiduciary duty exists when one party possesses "faith, confidence, and trust in another's judgment and advice." Doe v. Harbor Schs., Inc., 446 Mass. 245, 252 (2006).  The party alleging a breach bears the burden of proving the relationship, if it is not one created by law. Id. (citing Akin v. Warner, 318 Mass. 669, 674 (1945)).  Here, Sues provides no facts suggesting that such a relationship between her and Quashie exists by law, nor are there facts suggesting the existence of a *de facto* business relationship, such as any form of communication prior to Sues sending a cease-and-desist letter.

As for breach of the duty of good faith and fair dealing, Sues likewise fails to allege

---

[3] Sues alleges, in her Second Opposition to the Motion to Dismiss, that she "engaged in active business negotiations with Higher Yields Consulting." [Dkt. 116].  Sues did not include this fact in the Amended Complaint nor did she seek leave from the Court, and so this fact is not properly before the Court. Willitts v. Life Ins. Co. of N. Am., No. 18-CV-11908-ADB, 2021 WL 735784 (D. Mass. Feb. 25, 2021) ("[A]n opposition to a motion to dismiss is not the place for new factual allegations . . . even if the plaintiff is proceeding *pro se*.").  Even if it were, she provides no further facts suggesting that Quashie had knowledge of this business relation and intentionally interfered with it.

sufficient facts demonstrating the existence of a contract with Quashie, a predicate element for such a claim. The scope of this duty is "only as broad as the contract that governs the particular relationship." Eigerman v. Putnam Investments, Inc., 450 Mass. 281, 288 (2007) (citing Ayash v. Dana-Farber Cancer Inst., 443 Mass. 367, 385 (2005)). As Sues does not plausibly allege a contract between Quashie and herself, Sues fails to assert a breach of this duty and thus, is unable to state a claim upon which relief can be granted.

Finally, to state a claim for unjust enrichment, a plaintiff must show that "(1) [she] conferred a measurable benefit on the defendant; (2) [she] reasonably expected compensation from the defendant; and (3) the defendant accepted the benefit with the knowledge of the plaintiff's reasonable expectation." Tedeschi-Freij v. Percy L. Grp., P.C., 99 Mass. App. Ct. 772, 780 (2021). Sues claims that Quashie received benefits by utilizing "Doober's" name and brand. But the mere fact "that a person has benefitted from another is not of itself sufficient to require the other to make restitution." Id. Sues does not allege that she granted Quashie a benefit, much less one that she reasonably expected any type of compensation for or that Quashie accepted such a benefit with knowledge of her expectation. Accordingly, Sues fails to state a claim upon which relief may be granted on this ground.

IV.    CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Transfer [Dkt. 95] is **DENIED**. Defendant's Motion to Dismiss [Dkt. 102] is **GRANTED**. Plaintiff's Motion for Injunctive Relief [Dkt. 110] and Defendant's Motion to Strike [Dkt. 117] are **DENIED AS MOOT**.

        **SO ORDERED.**

Dated: May 21, 2026                                    /s/ Angel Kelley
                                                       Hon. Angel Kelley
                                                       United States District Judge

18